421 F.2d 589
 James L. GROH, Sr., as Administrator of the Estate of
Daughan Clair Groh, Deceased, Appellant,
v.
Ronald BROOKS, Individually and trading and doing business
as Brooks Sign Co., and Pennsylvania Electric
Company, a Corporation v. SHALLWAY
OUTDOOR ADVERTISING COMPANY, a
Corporation.
 No. 17944.
 United States Court of Appeals Third Circuit.
 Argued Nov. 3, 1969.
Decided Jan. 14, 1970.
 
 David E. Cohen, Uniontown, Pa., for appellant.
 Richard S. Dorfzaun, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellees, Shallway Outdoor Advertising Co. and Pennsylvania Electric Co. (William C. Walker, Pittsburgh, Pa., on the brief for Pennsylvania Electric Co.).
 William B. Freilich, LaBrum & Doak, Philadelphia, Pa., for appellee Ronald Brooks (Carl W. Brueck, Jr., Brueck, Walker & Brueck, Pittsburgh, Pa., on the brief).
 Before MARIS, SEITZ and STAHL, Circuit Judges.
 OPINION OF THE COURT
 STAHL, Circuit Judge.
 
 
 1
 This is an appeal from an order dismissing a survival and wrongful death diversity action on the ground that diversity had been 'manufactured' contrary to the rule of McSparran v. Weist, 402 F.2d 867 (3d Cir. 1968), cert. denied sub nom. Fritzinger v. Weist, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969).[1]
 
 
 2
 Plaintiff-appellant, a resident of Ohio, is the administrator of the estate of his grandnephew who was a citizen of Pennsylvania. Defendant-appellee Brooks is a citizen of Pennsylvania, and defendant-appellee Pennsylvania Electric Company is a Pennsylvania corporation with its principal place of business in the state.
 
 
 3
 The decedent, at the age of 19, was killed in Somerset County, Pennsylvania, on June 1, 1966. His death resulted from an electrical contact between a high voltage line of appellee Pennsylvania Electric Company and a crane of appellee Brooks. Prior to his death, decedent resided with his parents who at all times pertinent have been residents of Fayette County, Pennsylvania.[2]
 
 
 4
 This suit was filed on January 17, 1967, in the United States District Court for the Western District of Pennsylvania.[3] On October 2, 1968 while the instant case was pending trial, we decided in McSparran v. Weist, supra, that 28 U.S.C. 1359[4] bars federal court jurisdiction in a suit by a personal representative where the sole purpose of the appointment of the representative was to create diversity. However, in the interest of fairness to litigants whose cases were then pending in the district courts of this circuit, we limited retroactive application of our decision. Whether it was proper to give the McSparran rule retrospective application where the statute of limitations had run, or had nearly run, at the time the order dismissing the suit was issued is the question presented in this appeal.
 
 
 5
 On February 28, 1969, after all pretrial steps save the pretrial hearing had been completed, appellees moved to dismiss the action alleging that diversity had been manufactured by the appointment of a citizen of Ohio as administrator and that the court was therefore without subject matter jurisdiction under McSparran. In their motion to dismiss, appellees offered to waive the defense of the statute of limitations in the state court as to both the wrongful death and survival actions for a period of six months following a dismissal order.
 
 
 6
 Neither the court nor the parties suggested or requested a hearing or the filing of affidavits on the issue of manufactured diversity.[5] The court asked for the submission of briefs. Aside from mentioning the relationship of the administrator to the decedent, the appellant's lower court brief, which we have examined, did not discuss to any extent the question of alleged manufactured diversity. Thus, while not admitting that diversity had been manufactured, appellant submitted no affidavit or any other factual evidence in support of his claim of federal jurisdiction.[6]
 
 
 7
 On March 27, 1969, after consideration of the briefs submitted by the parties, the district court ordered the case dismissed stating that,
 
 
 8
 In accordance with the doctrine of McSparran v. Weist, * * * for lack of bona fide federal jurisdiction, * * * the Court (was) of (the) opinion that (the) motion should be granted. * * * Appendix (App.) 20a.
 
 
 9
 No express finding of fact with regard to the artificial creation of diversity jurisdiction was made by the court.
 
 
 10
 The court conditioned its order upon the agreement of the appellees to waive the defense of the statute of limitations in the state court and to give full effect in the state court to the pretrial discovery and other preliminary steps already taken in the federal court. Further, the court provided that if appellees failed to comply with these conditions within 30 days, the dismissal order would become void and the case would be reinstated on the federal docket.[7]
 
 
 11
 Appellant relies on our statement in McSparran that the rule against manufactured diversity is to be applied retroactively 'only where the court finds that in the circumstances of the particular case there is ample time and opportunity for the plaintiff to institute a new action in the state court * * *.' 402 F.2d at 877.
 
 
 12
 The import of this language, appellant maintains, is that a defendant necessarily loses the right to have the case dismissed under McSparran when the statute of limitations has run on the plaintiff's state cause of action. At that point, appellant argues, the district court's jurisdiction is 'vested' for the purposes of McSparran, and cannot be 'divested' by a defendant's promise to waive the statute of limitations.[8] Here, since the state limitation had run on the wrongful death action at the time of the lower court's order, appellant argues that his claim could not properly be dismissed by the district court. And, since the court's order of dismissal was entered a little more than a month before the statute of limitations expired on the survival claim,[9] it is contended that this, too, should not have been dismissed because appellant, as a citizen of Ohio, may not have had ample time to institute a new state court action.
 
 
 13
 Appellees argue that the conditions for retroactive application of McSparran have been met by their offer to waive the statute of limitations and by the district court's order requiring that full recognition be given to the federal discovery procedures already effected if the case is tried in the state court.
 
 
 14
 Retroactive application of the McSparran rule is permitted in a manufactured diversity case if the court finds that,
 
 
 15
 (1) the plaintiff has 'ample time and opportunity' to bring an action in the state court, and
 
 
 16
 (2) dismissal would not impose an 'unreasonable burden' on either party or on the administration of justice. Law v. Converse, supra; McSparran v. Weist, 402 F.2d at 877.
 
 
 17
 We are of the opinion that the district court's order in the instant case complies with the spirit of the requirements laid down in McSparran for retroactive application of the rule against manufactured diversity. In limiting retroactivity, we wished to make certain that we would not unfairly deny a party his day in court.[10]
 
 
 18
 The provision in the district court's order that appellees must waive the defense of the statute of limitations allows appellant ample opportunity to institute an action in the state court. And the condition that full effect be given to federal pretrial procedures already accomplished insures that appellant will not be unreasonably burdened by duplication of effort and expense. In both McSparran and its companion case, Esposito v. Emery, 402 F.2d 878 (3d Cir. 1968), we stated 'our unwillingness to permit the new rule to be applied retrospectively in circumstances which would make it seriously unjust or inequitable.' Law v. Converse, 419 F.2d at 40.[11]
 
 
 19
 We find no such injustice or inequity in the district court's disposition of the instant case.[12] The lower court's action is an innovative application of McSparran comporting with the spirit and purpose of that decision.
 
 
 20
 The district court's order in this case appears to be deficient in one respect, however. The order grants a dismissal provided the appellees comply with the conditions above mentioned within 30 days.[13] By necessary implication, the appellant must actually bring his action in the state court within that period.[14] Until the suit is instituted in the state court, appellees cannot comply with the conditions of the order. And if the appellant should choose to wait until the very end of the 30-day period to commence his action, defendants may not then have sufficient time to comply with the requirements of the order. We are, therefore, of the opinion that the order should be reformed to provide for two separate time periods: a reasonable period during which appellant must file a complaint in the state court in order to secure the benefit of appellees' waiver of the statute of limitations, and a further definite period within which appellees must comply with the conditions of the order so as to insure dismissal of the federal court action.[15]
 
 
 21
 While we approve the decision of the district court, we will remand the case to permit reformation of the order in accordance with this opinion and to fix another period of compliance from the date of the new order.
 
 
 22
 There remains a further problem which we deem appropriate to discuss at this time. Since appellant's position on appeal does not raise the issue of the adequacy of the district court's determination that there was manufactured diversity in this case,[16] and since the record reveals virtually nothing in support of appellant's claim of federal jurisdiction except that the administrator selected was the decedent's granduncle and was of diverse citizenship from the appellees, we do not question the district court's holding that diversity was manufactured.[17] Nevertheless, we believe it proper to indicate our view that it is preferable for such a finding to be clearly expressed by the district court.
 
 
 23
 If a plaintiff whose assertion of federal jurisdiction is challenged by a motion to dismiss fails to bring forth any factual material to support his claim of jurisdiction, then dismissal may properly be granted against him.[18] However, it should clearly appear from the record that plaintiff has had an opportunity to present facts, either by way of affidavit or in an evidentiary hearing, in support of his position that diversity was not manufactured.[19] If the plaintiff does present evidence or affidavits supporting the selection of an out-of-state representative, and the district court nevertheless finds that diversity jurisdiction was artificially created, then such finding[20] and the reasons underlying it should be clearly set forth in the record so as to inform the parties and facilitate review.
 
 
 24
 In determining whether or not diversity has been artificially created, the district court may consider, inter alia, such factors as the identity of the representative and his relationship to the party represented; the scope of the representative's powers and duties; any special capacity or experience which the representative may possess with respect to the purpose of his appointment; whether there exists a non-diverse party, such as a parent in a suit for injuries to a child, who might more normally be expected to represent the interests involved; whether those seeking the appointment of the representative express any particular reasons for selecting an out-of-state person; and whether, apart from the appointment of an out-of-state representative, the suit is one wholly local in nature.
 
 
 25
 The order of the district court will be vacated and the case remanded for entry of an order in accordance with this opinion.
 
 
 
 [1]
 Several other circuits have recently adopted the principle of McSparran. O'Brien v. AVCO Corp. (2d Cir. 1969); Lester v. McFaddon, 415 F.2d 1101 (4th Cir. 1969). See also Dougherty v. Oberg, 297 F.Supp. 635 (D.Minn.1969)
 
 
 [2]
 Under Pennsylvania law, decedent's parents are the only parties entitled to share in his estate, Intestate Act of 1947, 20 P.S. 1.3 (1950), and the only parties entitled to recover under the wrongful death act, 12 P.S. 1602 (1953)
 
 
 [3]
 Appellees Brooks and Pennsylvania Electric Company subsequently joined Shallway Outdoor Advertising Company as a third party defendant. Shallway is not involved in this appeal
 
 
 [4]
 Section 1359 provides:
 A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.
 
 
 [5]
 See discusson on page 8, infra
 
 
 [6]
 At oral argument in this court, appellant conceded that he was not relying on any claim that his appointment was not for the purpose of creating diversity but stated rather that he was basing his appeal on the alleged improper retroactive application of the McSparran doctrine by the district court
 
 
 [7]
 The order of the district court is set forth in full below:
 And Now, this 27th day of March, 1969, upon consideration of motion of defendants Ronald Brooks, individually and trading and doing business as Brooks Sign Co., and Pennsylvania Electric Company (all having heretofore answered and participated in various discovery and other preliminary procedures in advance of trial) to dismiss the action, in accordance with the doctrine of McSparran v. Weist, 402 F.2d 867 (C.A.3, 1968), for lack of bona fide federal jurisdiction, and the Court being of opinion that such motion should be granted, subject to appropriate conditions for the protection of the interests of the parties and the due administration of justice without delay or protraction of the litigation,
 It Is Ordered that said motion be and the same hereby is granted, and the above-styled cause be and the same hereby is dismissed, for lack of bona fide federal jurisdiction; Provided That the above-named defendants, at whose desire this dismissal is granted, shall effectively submit themselves to the jurisdiction of the Court of Common Pleas of Fayette County, Pennsylvania, in such proceedings as plaintiff herein may have brought or shall hereafter bring to assert the cause of action involved in the case at bar, and shall also effectively waive any defenses based upon the statute of limitations or upon lack of venue or jurisiction in said Court of Common Pleas, and shall also agree to the use in said Court of all pleadings, depositions, discovery and other preliminary steps heretofore taken in the case at bar to the same extent as if the case had remained pending in this Court, promptly filing in due course in said Court appropriate pleadings substantially identical to those filed in this Court and filing appropriate pleadings, stipulations, or other documents giving effect to the requirements and conditions imposed by this order, and waiving any additional delays or time limits otherwise available in said Court of Common Pleas, and placing the cause in the same posture for prompt trial as it would enjoy had it remained pending in this court;
 And Provided Further that if said defendants, or any of them, shall fail to comply within thirty (30) days with the requirements of the foregoing proviso, or if the Supreme Court shall reverse said McSparran case or otherwise disavow the doctrine thereof, then and in such contingencies this order shall by its own terms cease to be in force and effect, and the cause shall be reinstated on the docket of this Court and be further proceeded in as if this order had never been made. App. 20a-21a.
 
 
 [8]
 Appellant attempts to bolster his position by reference to the principle that an objection to subject matter jurisdiction may be raised at any time. Thus he claims that to permit a defendant, who wishes to gain retroactive application of the McSparran rule against a plaintiff whose state cause of action would be barred, to 'divest' the federal court of jurisdiction by waiving the statute of limitations, would mean that a defendant could wait until judgment was entered against him in the trial court and then render it void by offering to waive the state statute of limitations
 It is clear that such an unusual result is not compelled by McSparran. It is not the defendant's promise to waive the statute of limitations but rather the court's determination that dismissal would not prejudice any party which results in retroactive application of the McSparran rule.
 In Law v. Converse, 419 F.2d 38 (3d Cir. 1969), the plaintiff, who lost a federal court verdict in a wrongful death and survival action, sought to void the judgment by alleging in a motion to dismiss that her appointment as administratrix had been made solely for the purpose of creating diversity. This course was taken in an attempt to prevent the federal court judgment from being res judicata to any subsequent suit in a state court on the survival claim. We upheld the district court's refusal to dismiss the action after entry of judgment. Judge Freedman, the author of the McSparran opinion, said in Converse:
 The determination of the extent to which (McSparran) should be applied retrospectively require(s) * * * a consideration of the circumstances of the particular case, to which an individual, equitable judgment (is) to be applied. * * * It would have been improper for the district court to destroy a fully effectuated adjudicative process by a retrospective application of the new rule of McSparran, a rule which does not touch the merits yielded by the adjudicative process. 419 F.2d at 41.
 
 
 [9]
 See note 14, infra
 
 
 [10]
 We expressed our concern in this respect as follows:
 We recognize that many actions are now pending in the courts of this circuit in reliance on our earlier decisions. In many of these actions the statute of limitations may already bar the institution of new suits in the state courts, although in some of them protective state court actions may have been filed. To apply the rule we have here announced to all pending and future actions indiscriminately would work great hardship on those who have relied on our prior recognition of artifical diversity jurisdiction. 402 F.2d at 876-877.
 
 
 [11]
 We also said in Converse:
 While our prospective decision on jurisdiction necessarily was absolute, the determination of the extent to which it should be applied retrospectively required, as an equal necessity, a consideration of the circumstances of the particular case, to which an individual, equitable judgment was to be applied. * * * But in its ultimate scope the retrospective application of McSparran must be limited to cases in which no serious hardship or burden will be imposed on either the plaintiff or defendant, or on the administration of justice. 419 F.2d at 41.
 
 
 [12]
 Unlike the recent case of Siegel v. Slaney, 419 F.2d 176 (3d Cir. 1969), the circumstances of the present case permit the framing of a dismissal order which adequately protects the parties from prejudice
 In Siegel the district court applied McSparran retroactively and dismissed a complaint against one of two co-defendants without providing for its reinstatement in the federal court if the defendant failed to keep its promise to waive the statute of limitations. The defendant who thus gained dismissal had made its motion to dismiss with the expectation that its co-defendant would join in the waiver of the statute of limitations. The co-defendant did not so join, and the defendant who had won dismissal thereupon disavowed its intent to waive the statute and together with the plaintiff, appealed the dismissal to this court. We held in the 'unsual circumstances' of that case that 'the likelihood of the statute of limitations affecting the rights of * * * (the parties was) sufficiently great to establish that the parties (would) be seriously prejudiced by the dismissal of the federal action.' 419 F.2d at 179.
 Here, however, both appellees joined in the motion to dismiss and both agreed to waive the state statute of limitations. There is no indication whatsoever that appellees will not carry out this promise. Indeed, on oral argument before this court, appellees again represented their willingness to go to trial in the state court. Furthermore, the district court has properly provided for reinstatement of the case in the federal court should appellees fail to execute their waiver within a specified time.
 
 
 [13]
 See text of the order quoted in note 7, supra
 
 
 [14]
 Although appellant originally commenced a cautionary action in the state court by filing a praecipe for a writ of summons on May 11, 1967, the rule in Pennsylvania is that unless the writ is actually served on the defendant, it may not be reissued after the lapse of a period equivalent to 'the period of time required by the applicable statute of limitations for the bringing of the action.' Zarlinsky v. Laudenslager, 402 Pa. 290, 167 A.2d 317, 320 (1961). From the statements of both parties in the briefs submitted to this court and to the court below to the effect that the state action had expired, it would seem that the writ was never served on defendant-appellees. Thus, since more than two years have elapsed from the date of the issuance of the writ, and the one-year period of limitation for wrongful death actions and the two-year period of limitation for survival actions have passed, appellant may not now revive his original state court suit by seeking reissuance of the writ. Rather, he must institute a new action which, of course, would be subject to the defense of the statute of limitations
 We note that had the original summons been served on the appellees, and they had not ruled plaintiff to file a complaint, the statute of limitations would not have been available as a defense and no issue would be presented by the instant appeal. Galbraith v. Gahagen, 415 Pa. 500, 204 A.2d 251 (1964).
 
 
 [15]
 Appellees may waive the statute of limitations either by failing to raise it as an affirmative defense in a responsive pleading, Stahl v. Hilderhoff, 432 Pa. 179, 247 A.2d 582 (1968), Pennsylvania Rules of Civil Procedure 1026, 1030, 1032, 1041, 1045(b), 12 P.S.Pa. Appendix, or by affirmatively filing an appropriate stipulation or some other document in the state court reflecting such waiver
 
 
 [16]
 See note 6, supra
 
 
 [17]
 See Richard v. Dervarics, 302 F.Supp. 709 (M.D.Pa.1969)
 
 
 [18]
 In McSparran we noted that the presumption against federal jurisdiction is only overcome by a clear showing on the record that jurisdiction exists, 402 F.2d at 876, and that when challenged, the plaintiff, who invoked diversity jurisdiction, has the burden 'to prove all the facts by which it could be sustained.' Id. at 875
 
 
 [19]
 See, e.g., Richard v. Dervarics, 302 F.Supp. 709 (M.D.Pa.1969), where the parties declined a hearing on the issue but submitted affidavits
 
 
 [20]
 In McSparran, we said:
 In case involving causes of action which arose prior to * * * (the date of the opinion), including cases now pending, a district court shall apply the new rule against artificially created diversity, either on motion of a party or sua sponte, if it is conceded by the parties or the court finds as a fact that diversity was artificially created, * * *. (402 F.2d at 877).
 The same requirement applies, of course, to prospective application of the McSparran rule. See 402 F.2d at 876, where we said: 'Whether in an individual case diversity jurisdiction is 'manufactured' is, of course, a question of fact. * * * Where it is not conceded it will be for the district court to make the factual determination.'