# United States Court of Appeals
## For the First Circuit

No. 19-1618

JOSEPHINE B. DONAHUE, on behalf of herself and all others so similarly situated,

Plaintiff, Appellant,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION;
OCWEN LOAN SERVICING, LLC,

Defendants, Appellees,

82 COBB LANE, LLC,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Barron, Circuit Judges.

Todd S. Dion on brief for appellant.
Marissa I. Delinks and Hinshaw & Culbertson LLP on brief for appellee Ocwen Loan Servicing, LLC.

August 14, 2020

**Barron, <u>Circuit Judge</u>.** Josephine Donahue appeals from a grant of summary judgment to Ocwen Loan Servicing, LLC ("Ocwen") in her 2017 suit in the District of Massachusetts against Ocwen and the Government National Mortgage Association ("GNMA").[1] We dismiss the appeal for lack of appellate jurisdiction. <u>See</u> 28 U.S.C. § 1291 (providing federal appellate jurisdiction of "final decisions" of district courts).

## I.

The suit has its origin in a mortgage that Donahue executed on or about June 22, 2010, in the amount of $484,330, to Reliant Mortgage Company for her home in Scituate, Massachusetts. In June of 2014, the mortgage was assigned to Ocwen, and, in September of 2014, Donahue defaulted on it.

More than a year later, on June 17, 2016, Ocwen sent a letter to Donahue, who remained in default, that notified her that a foreclosure sale would occur on July 21, 2016. Ocwen then conducted an appraisal that indicated that the fair market value of the property was $500,000, a figure that Donahue disputes. Ocwen held the foreclosure auction on July 21, 2016. Ocwen was the highest bidder and paid $482,264 for the property.

---

[1] Donahue misnamed GNMA in the case caption, instead listing the "Federal National Mortgage Association" as a defendant, but properly named GNMA in the body of the complaint.

Following the auction, Donahue filed suit on February 27, 2017, under Massachusetts law, against GNMA and Ocwen in Massachusetts Superior Court. The complaint alleged, first, that GNMA and Ocwen executed a conveyance of her property on behalf of another entity without the appropriate Power of Attorney in violation of Mass. Gen. L. c. 183, § 32 and Mass. Gen. L. c. 183, § 4, (Count I). Second, the complaint alleged that the defendants breached their duty of good faith and reasonable diligence under Massachusetts contract law (Count II). Third, the complaint alleged that the defendants breached the mortgage contract and the covenant of good faith and fair dealing (Count III) under Massachusetts law. With respect to this claim, the complaint alleged that the defendants had failed to satisfy regulations of the United States Department of Housing and Urban Development that her mortgage contract had incorporated and that created a number of conditions precedent to foreclosure, including that the mortgagee "make a reasonable effort to arrange" a face-to-face interview with the mortgagor before foreclosure, 24 C.F.R. § 203.604(b).

With GNMA's consent, Ocwen removed the action to the District of Massachusetts based on diversity jurisdiction. See 28 U.S.C. § 1332. GNMA never filed an appearance. Ocwen then moved for summary judgment as to all of Donahue's claims against it, and the District Court granted that motion on May 20, 2019. The

District Court's judgment, however, did not address Donahue's then-still-pending claims against GNMA.

The next event of relevance to the issues before us occurred on June 17, 2019. That was when Donahue filed her notice of appeal in our Court, in which she sought review of only the grant of summary judgment to Ocwen on Count III of her complaint.

In response, our Court, on August 7, 2019, issued an order to show cause concerning our appellate jurisdiction. The concern about our jurisdiction arose from the fact that the District Court's grant of summary judgment to Ocwen as to all of Donahue's claims against it did not address Donahue's then-still-pending claims against GNMA. The show-cause order stated that "the orders appealed from do not appear to be final or appealable on an interlocutory basis" and thus that:

> [T]his court does not appear [to] have jurisdiction to review this appeal, absent certification pursuant to Fed. R. Civ. P. 54(b). See 28 U.S.C. §§ 1291, 1292; Barrett ex rel. Est. of Barrett v. United States, 462 F.3d 28, 32 (1st Cir. 2006) (stating that a district court's order disposing of fewer than all defendants is not ordinarily final and appealable when it lacks a Rule 54(b) certification).

See Fed. R. Civ. P. 54(b) ("[W]hen multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates

- 5 -

fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").  The order required Donahue to either voluntary dismiss her appeal or "show . . . why this appeal should not be dismissed for lack of jurisdiction."

On August 9, 2019, Donahue filed a notice of voluntary dismissal in the District Court of her claims against GNMA.  The District Court did not enter any further orders or judgments, and Donahue did not file a new notice of appeal.  Donahue then filed a response to the show cause order in our Court on August 21, 2019.  In that response, she stated that her appeal should go forward because GNMA "never responded to the original complaint nor are they the mortgagee in the case and the Appellant has requested they be dismissed from the case."

## II.

Donahue contends that the judgment below from which she now appeals is a "final decision" within the meaning of 28 U.S.C. § 1291, because she has voluntarily dismissed her claims against GNMA pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  The subsection of Rule 41 that Donahue relied on provides that a plaintiff may "dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either

an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A) (emphasis added). We do not doubt that "an action" under Rule 41(a)(1)(A)(i) can refer to all claims a plaintiff has brought against a single defendant in a multi-defendant suit rather than only all claims against all defendants in such a suit. See Cabrera v. Municipality of Bayamón, 622 F.2d 4, 5-6 (1st Cir. 1980) (so applying the phrase "an action" in Rule 41(a)(1)(A)); see also Pedrina v. Chun, 987 F.2d 608, 609–10 (9th Cir. 1993) (reading Rule 41(a) as "[p]ermitting a plaintiff to dismiss fewer than all of the named defendants"); Plains Growers, Inc. v. Ickes–Braun Glasshouses, Inc., 474 F.2d 250, 254–55 (5th Cir. 1973) (same); Young v. Wilky Carrier Corp., 150 F.2d 764, 764 (3d Cir. 1945) (same).[2] Nevertheless, the concern about our

---

[2] Although the Second Circuit once found that Rule 41(a)(1)(A)(i) did not allow a plaintiff to dismiss the claims against just one defendant in a multidefendant case, see Harvey Aluminum, Inc. v. Am. Cyanamid Co., 203 F.2d 105, 108 (2d Cir. 1953), the Circuit has since noted that Harvey Aluminum "has been criticized and is now against the weight of authority," and that it might have gone too far. Wakefield v. N. Telecom, Inc., 769 F.2d 109, 114 n.4 (2d Cir. 1985); see also Thorp v. Scarne, 599 F.2d 1169, 1176 (2d Cir. 1979) (limiting Harvey Aluminum to its "extreme" facts).

appellate jurisdiction that prompted the show-cause order persists.

That concern remains not because Donahue voluntarily dismissed her claims against GNMA only after she had filed a notice of appeal in our Court. It is true that, generally, "[t]he filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) (emphasis added); see also 16A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3949.1 (5th ed. 2020) ("The general principle is that the filing of the appeal transfers authority over matters encompassed in the appeal to the court of appeals. As to such matters, the district court will lack power to act during the pendency of the appeal."). But, no divestiture of the district court's jurisdiction occurs "if the notice of appeal is defective in some substantial and easily discernible way (if, for example, it is based on an unappealable order) or if it otherwise constitutes a transparently frivolous attempt to impede the progress of the case." United States v. Brooks, 145 F.3d 446, 456 (1st Cir. 1998); see Rivera-Torres v. Ortiz Vélez, 341 F.3d 86, 96 (1st Cir. 2003) ("The defendants' notice of appeal was patently meritless, and therefore failed to divest the district court of jurisdiction in the first instance.");

Wright & Miller, supra, § 3949.1 ("The weight of authority holds that an appeal from a clearly non-appealable order fails to oust district court authority.").

Thus, the notice of appeal that Donahue filed did not bar her from voluntarily dismissing her claims against GNMA pursuant to Rule 41(a)(1)(A)(i). That notice of appeal was patently meritless at that time precisely because her claims against GNMA were then still pending. See Fed. R. Civ. P. 54(b) ("[A]ny order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

The concern about our appellate jurisdiction persists because Donahue needs us to do more than merely ignore her notice of appeal. She also needs us to count it after we have ignored it and, in doing so, to treat it as if it had been filed after the decision below became final. For, otherwise, she will not have filed a notice of appeal from a final decision at all. See 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States."); Fed. R. App. P. 3 ("An appeal permitted by law

- 9 -

as of right from a district court to a court of appeals may be taken only by filing a notice of appeal with the district clerk.").

Certain provisions of the Federal Rules of Appellate Procedure do expressly permit us to treat a notice of appeal that has been filed before the decision below was "final" as if it had been filed after the decision became "final." See, e.g., Fed. R. App. P. 4(a)(2) (stating that "[a] notice of appeal filed after the court announces a decision or order -- but before the entry of the judgment or order -- is treated as filed on the date of and after the entry"); Fed. R. App. P. (4)(a)(4)(B)(i) ("If a party files a notice of appeal after the court announces or enters a judgment -- but before it disposes of any motion listed in Rule 4(a)(4)(A) -- the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered."). These exceptions, however, do not apply here, and Donahue does not argue otherwise.

That is not to say that Donahue is without any authority on her side. In IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1055 & n.5 (2d Cir. 1993), for example, the Second Circuit treated the plaintiff's notice of appeal of an otherwise non-final district court decision as one that was "premature" when filed but that "ripened" into a valid notice of appeal upon the voluntary dismissal of the remaining party. The Second Circuit acknowledged that no exception in the Federal Rules of Appellate Procedure

- 10 -

authorized such treatment.  See id. (explaining that both Fed. R.
App. P. 4(a)(4) and Fed. R. App. P. 4(a)(2) were inapplicable to
the appeal at issue).  But, it still held that it had had "appellate
jurisdiction" because the notice of appeal was properly deemed to
have been "premature" but then to have "ripened."  Id. at 1055.

In addition, in DL Resources, Inc. v. FirstEnergy
Solutions Corp., 506 F.3d 209, 214-16 (3d Cir. 2007), the Third
Circuit ruled similarly with respect to a notice of appeal filed
after the district court had entered a judgment order setting forth
an unspecified damages award.  The Third Circuit found that, even
though Rule 4(a)(2) was "inapplicable" because the appellee
"appealed from an order that had been entered and was not final,"
id. at 213, the defendant's otherwise premature notice of appeal
"ripened" after the appeal was filed when the district court
entered an amended judgment that quantified the damages award, id.
at 216.  Thus, FirstEnergy held on that basis that it had
jurisdiction to hear the appeal under 28 U.S.C. § 1291.  Id.[3]

The ripening logic these cases deploy has some appeal
(no pun intended).  It saves an appellant from having to file an
additional notice.  It thereby both ensures that the finality rules

---

[3] While Donahue invokes Herrmann and Ocwen cites FirstEnergy,
we also note that the Seventh Circuit has ruled similarly in
Garwood Packaging, Inc. v. Allen & Co., 378 F.3d 698, 701 (7th
Cir. 2004) (finding appellate jurisdiction in circumstances like
those presented here "based on Rule 4(a)(2)").

- 11 -

do not become a trap for the unwary and obviates the need for starting an appeal over from scratch based on a technicality.

We decline on our own, however, to treat a notice of appeal in such a now-you-see-it, now-you-don't, now-you-see-it-again way. The plain language of Rules 3 and 4 of the Federal Rules of Appellate Procedure as to when a notice of appeal must be filed -- at least when read in conjunction with 28 U.S.C. § 1291 -- does not comfortably accommodate the conclusion that a notice of appeal filed following a non-appealable order may be treated as if it actually had been filed following an appealable order. See Fed. R. App. P. 3(a) ("An appeal permitted by law as of right from a district court to a court of appeals may be taken only by filing a notice of appeal with the district clerk within the time allowed by Rule 4."); Fed. R. App. P. 4(a) ("In a civil case . . . the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days entry of the judgment or order appealed from," with certain types of appeals granted a more flexible timing requirement.). Moreover, if we were to treat a notice of appeal that is patently meritless in such a springing manner, we would run into another problem. We would render seemingly superfluous the existing, expressly limited exceptions in those two rules that allow for ripening in specified circumstances. After all, we would be holding that a notice of appeal from a non-appealable order may be later treated as it had been filed from an order that

subsequently became appealable even when no provision of the Federal Rules of Appellate Procedure expressly authorizes such treatment.

We note, too, that this approach hardly can be said to set a trap, even though it is admittedly not as forgiving of mistakes as is the one that embraces the logic of ripening outside the circumstances expressly recognized by the rules themselves. We have long made clear that a notice of appeal that is plainly ineffective does not divest the district court of jurisdiction. See Rivera-Torres, 341 F.3d at 96 ("The defendants' notice of appeal was patently meritless, and therefore failed to divest the district court of jurisdiction in the first instance."). Thus, an appellant who jumps the gun by filing a notice of appeal before the decision below was final is on notice that she is not without options to correct the mistake. Upon realizing it, she may cure the finality problem that renders the notice of appeal of no consequence and then, in accord with the plain terms of Rules 3 and 4, file a timely notice of appeal from the now final decision. That way, there can be no risk of confusion about what exactly is being appealed, given that the notice of appeal that secures our jurisdiction then would follow rather than precede the decision below from which review is sought. See Kotler v. Am. Tobacco Co., 981 F.2d 7, 10-11 (1st Cir. 1992) ("Fed. R. App. P. 3(c) . . . requires, inter alia, that a notice of appeal 'designate the

judgment, order or part thereof appealed from.' The rule's commands are jurisdictional and mandatory."); Fed. R. App. P. 3(c) ("The notice of appeal must . . . designate the judgment, order, or part thereof being appealed."); see also Kotler v. Am. Tobacco Co., 926 F.2d 1217, 1221 (1st Cir. 1990) (explaining that the court of appeals is "not limited to the four corners of the notices [of appeal], but may examine them in the context of the record as a whole"), vacated on other grounds by 505 U.S. 1215 (1992).

## III.

The appeal is **dismissed** for lack of jurisdiction.